1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLEN H. NOEL,                     )
                                         )
            Plaintiff,        )      CASE NO.  C05-1367-MJB
                                         )
     v.                     )      MEMORANDUM OPINION
                                       )      AND ORDER
CITY OF SEATTLE, et al.,     )
                                       )
           Defendants.    )
_____ )

13

## I.  INTRODUCTION AND SUMMARY CONCLUSION

14       This matter is before the undersigned Magistrate Judge by consent of the parties.

15 On August 5, 2005, plaintiff Allen H. Noel ("Mr. Noel"), proceeding *pro se*, filed a

16 complaint against the City of Seattle ("City") and the State of Washington ("State"),

17 alleging violation of Title II of the Americans with Disabilities Act of 1990 (ADA).  Dkt.

18 #1.  This lawsuit currently proceeds solely against the State, as Mr. Noel previously

19 stipulated to dismissal of his claims against the City.  *See* Dkt. #10.

20       Now before the Court is the State's motion for dismissal and/or summary

21 judgment, seeking dismissal of Mr. Noel's lawsuit with prejudice pursuant to Fed. R.

22 Civ. P. 12(c) or in the alternative Fed. R. Civ. P. 56(c).  Mr. Noel filed a response in

23 opposition to the motion (Dkt. #21) and the State filed a reply (Dkt. #22).  Having

24 reviewed the State's motion, all pleadings in support and in opposition thereto, and the

25

26 MEMORANDUM OPINION
AND ORDER - 1

1 remaining record, the Court GRANTS the State's motion and dismisses all Mr. Noel's

2 claims against the State.

## II.  BACKGROUND

4 Pursuant to the mandate set forth in RCW 77.04.012, the Washington State

5 Department of Fish and Wildlife ("WDFW") manages numerous parcels of land

6 throughout the state for various purposes, including preserving habitat and providing

7 hunting and other recreational opportunities to the public.  *See* Dkt. #19, Attachment 1 -

8 Decl. of Brian W. Williams.  This case arises out of a proposal developed by the

9 WDFW, in partnership with the Skagit River Systems Cooperative, the Skagit Watershed

10 Council, and Seattle City Light, to restore 157 acres of the Headquarters Unit of the

11 Skagit Wildlife Area ("Headquarters Unit") to estuarine habitat.  The proposal, which is

12 described in a document entitled the Wiley Slough Estuarine Restoration Design, dated

13 July 2005 ("Design Document"), is referred to as the Wiley Slough Project[1].  Dkt. #19 at

14 4.

15 WDFW acquired the Skagit Wildlife Area in the 1950's. Dkt. #19, Attachment 1

16 at 2.  A portion of the property is commonly referred to as the "Headquarters Unit," the

17 majority of which was originally tidal marsh habitat.  *Id.*  Upon acquisition of the

18 property, WDFW began managing it for the benefit of waterfowl by converting a portion

19 of the property to tillable soil in which cereal grains could be grown in order to attract

20 and provide winter forage for waterfowl.  *Id.*  The conversion required construction of a

21 perimeter dike to protect the site from riverine and tidal inundation, and installation of

22 tide gates to allow water from the site to sufficiently drain to Skagit Bay, to prevent

23

---

24 [1]The Wiley Slough Area is located on Fir Island in the Skagit River delta near Conway, WA.  Dkt. #19, Ex. A at 5.

25

26 MEMORANDUM OPINION
AND ORDER - 2

1   water from the Skagit River and Skagit Bay from flooding the site, and to allow the site

2   to be planted with cereal grains.  Since the conversion, the land has been used by

3   members of the public for waterfowl and pheasant hunting, bird-watching, walking, and

4   other recreational activities.  *Id.*

5       The exclusion of the site from tidal and riverine influence eliminated the tidal

6   marsh habitats that provide important rearing habitats for juvenile salmon.  Dkt. #19,

7   Attachment 1 at 3.  The area in which the Skagit Wildlife Area is located provides

8   critical rearing habitat for Puget Sound Chinook Salmon and Bull Trout, which are listed

9   as threatened under the federal Endangered Species Act ("ESA"), and for Puget Sound

10  Steelhead, which is proposed for listing under the ESA.  *Id.*  The Wiley Slough Project

11  will provide estuary habitats beneficial to both fish and wildlife species.  *Id.*

12      Mr. Noel states that he is a disabled recreational hunter and birdwatcher, who

13  regularly uses the Fir Island portion of the Skagit Wildlife Area.  Dkt. #1 at 2.  He

14  indicates that he suffers from serious mobility disabilities, and that the Headquarters

15  Unit is the only WDFW area where he can traffic on the fields successfully to hunt

16  pheasant.  Dkt. #21 at 1.  He contends that the proposed Wiley Slough Project would

17  eliminate most of the dikes, and hence the fields between them that allow for pheasant

18  hunting.  Dkt. #21 at 1.  He further contends that the WDFW plans to stop its present

19  pheasant release program as a part of the Wiley Slough Project.  *Id.*  He claims that the

20  WDFW developed the plan without properly notifying the hunting public, the Wiley

21  Slough Project contains no accommodation for the disabled hunter, and the disabled

22  were never considered in the development of the plan.  *Id.* at 2.

23      The State indicates that the Wiley Slough Project would involve removal of the

24  dikes around the perimeter of the Headquarters Unit, augmentation of an existing dike

25

MEMORANDUM OPINION
26  AND ORDER - 3

1    that runs through the parcel, and construction of an additional dike adjacent to private

2    farm land that borders the parcel.  Dkt. #19 at 4.  The State asserts that in those areas

3    proposed in the Design Document for public access, including the parking lot and the

4    dike running through the middle of the site, WDFW plans to provide ADA compliant

5    access for the disabled.  *Id.*   The State also indicates that WDFW and its partners

6    conducted public outreach efforts in order to inform the affected communities about the

7    restoration project and to receive their input prior to finalizing the Design Document.

8    Specifically, the States asserts that information field trips were held at the site on five

9    different dates during the spring and summer of 2004, and two open houses were held in

10   Skagit County, at which public comments were received.  *Id.* at 4-5.

## III.  THE PARTIES POSITIONS

12        In his Complaint, Mr. Noel alleges that defendants engaged in unlawful disability

13   discrimination in violation of  Title II of the Americans with Disabilities Act of 1990 by:

14   (1) failing to inform or include plaintiff and other disabled hunting citizens and other

15   disabled recreational users of the area affected by the Wiley Slough Restoration Project

16   in the planning process for the Project; (2) failing to hold public meetings for or

17   distributing any materials to plaintiff or other disabled hunting citizens or other disabled

18   recreational users of the area affected by the Wiley Slough Restoration Project; (3)

19   failing to include adequate funding for accommodation or assistance to plaintiff or other

20   disabled hunting citizens or other disabled recreational users of the area affected by the

21   Wiley Slough Restoration Project; and (4) failing to conduct public meetings which

22   provide for adequate physical accommodations or hearing accommodations for plaintiff

23   or other disabled hunting citizens or other disabled recreational users of the area affected

24   by the Wiley Slough Restoration Project.  Dkt. #1 at 4.  He seeks injunctive relief,

25

26   MEMORANDUM OPINION
     AND ORDER - 4

1   attorney's fees and such other relief as the court deems equitable.  *Id.* at 4-5.

2   In the present motion, the State moves for dismissal of Mr. Noel's claims on the

3   basis that (1) Mr. Noel has not established that he has standing to make the claims stated

4   in his complaint or to request injunctive relief, and (2) he has not stated a claim for

5   which relief may be granted under the ADA.  Further, if the Court determines that Mr.

6   Noel has standing and has stated a claim under the ADA, the State moves for dismissal

7   of Mr. Noel's claims regarding funding and the accessibility of public meetings on

8   summary judgment.

9   In response to the State's motion, Mr. Noel also claims that the WDFW has

10  produced a plan for the Headquarters Unit which discriminates against him, a disabled

11  hunter, as it will eliminate all pheasant hunting in the Headquarters Unit without

12  providing reasonable alternatives.  He requests that the court reject the motion for

13  dismissal and consider non-judicial binding arbitration or trial as fair methods to resolve

14  the conflict.

## IV.  STANDARD OF REVIEW

16  Under Fed. R. Civ. P. 12(c), when the district court has before it a motion for

17  judgment on the pleadings, and matters outside the pleadings have been presented and

18  are not excluded by the court, the court must treat the motion as one for summary

19  judgment and dispose of it as provided in Rule 56.  *See* Fed R. Civ. P. 12(c).  In deciding

20  the present motion, this Court will consider matters outside of the pleadings, including

21  the declarations and exhibits attached to the State's motion and reply, as well as the

22  attachments to Mr. Noel's response in opposition to the motion.  Accordingly, the Court

23  treats the State's motion as a motion for summary judgment pursuant to Rule 56.

24  Summary judgment is appropriate if the "pleadings, depositions, answers to

25

MEMORANDUM OPINION
26  AND ORDER - 5

1   interrogatories, and admissions on file, together with the affidavits, if any, show that

2   there are no genuine issues as to any material fact and that the moving party is entitled to

3   judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding a summary judgment

4   motion, the court views the evidence in the light most favorable to the non-moving party,

5   and draws all reasonable inferences in that party's favor.  *T. W. Elec. Serv., Inc. v.*

6   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The moving

7   party has the burden of demonstrating the absence of genuine issues of material fact.

8   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 Led.2d 202

9   (1986).  If the movant meets this burden, then summary judgment will be granted unless

10   there is significant probative evidence tending to support the opponent's legal theory.

11   *See First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

## V.  DISCUSSION

13        Title II of the ADA prohibits a public entity[2] from discriminating against a

14   qualified individual with a disability, or excluding such an individual from participation

15   in, or denying the individual the benefits of, any of the entity's services, programs, or

16   activities.  *See* 42 U.S.C. § 12132.  In this case, Mr. Noel generally alleges that

17   defendant violated Title II of the ADA during the planning process for the Wiley Slough

18   Project.  The State initially argues that Mr. Noel has not established that he has standing

19   to bring this lawsuit and that he has failed to state a claim under the ADA.  Standing is a

20   threshold question in every case.  *Alaska Fish and Wildlife Federation and Outdoor*

21   *Council, Inc. v. Dunkle*, 829 F.2d 933, 937 (9th Cir. 1988).  Thus, this Court first

22

23        [2]The ADA definition of  "public entity" includes "any State or local government;

24  and any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).

25

MEMORANDUM OPINION
26  AND ORDER - 6

1    considers whether standing exists in this case.

2    A.    Standing

3        "It goes without saying that those who seek to invoke the jurisdiction of the

4    federal courts must satisfy the threshold requirement imposed by Article III of the

5    Constitution by alleging an actual case or controversy." *Fortyune v. American Multi-*

6    *Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *City of Los Angeles v.*

7    *Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).  To show Article III

8    standing, a plaintiff has the burden of proving: (1) that he has suffered an "injury in

9    fact," (2) a causal relationship between the injury and the challenged conduct, and (3)

10   that the injury likely will be redressed by a favorable decision.  *See Lujan v. Defenders*

11   *of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  In the

12   context of injunctive relief, [the plaintiff] must additionally demonstrate "a sufficient

13   likelihood that he will again be wronged in a similar way[.]" *Fortyune*, 364 F.3d at 1081

14   (quoting *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660)).  That is, he must establish a "real and

15   immediate threat of repeated injury."  *Id. (*quoting *O'Shea v. Littleton*, 414 U.S. 488,

16   496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

17       The first element of standing is at issue in this case.  The State contends that Mr.

18   Noel has failed to allege an injury in fact.  An injury in fact is a harm that is (a) concrete

19   and particularized, and (b) actual or imminent, not conjectural or hypothetical.  *Lujan*,

20   504 U.S. at 560, 112 S.Ct. 2130 (internal citations omitted).   In *Lujan*, the Court notes

21   that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal

22   and individual way." *See supra* text accompanying note 1.

23       Specifically, the State argues that Mr. Noel's allegations in the Complaint fail to

24   describe any concrete, particularized injury to himself resulting from the State's actions

25
     MEMORANDUM OPINION
26   AND ORDER - 7

1   that he claims were inconsistent with the ADA.  The State asserts that Mr. Noel's

2   complaint only makes general allegations that WDFW failed to provide adequate public

3   involvement opportunities for himself and other disabled hunters or disabled recreational

4   users of the Headquarters Unit, and that WDFW failed to "include adequate funding for

5   accommodation or assistance to plaintiff or other disabled hunting citizens or other

6   disabled recreational users of the area." Dkt. #19 at 7.  Additionally, the State argues that

7   Mr. Noel does not allege any real and immediate threat of *future* injury that might

8   establish standing to request an injunction because his allegations regarding public

9   notice and input opportunities are all in the past tense, and his contention regarding

10  inadequacy of funding for ADA accommodations is necessarily vague because the

11  project partners have only obtained partial funding at this point.  *Id.*

12        In response to the State's motion, Mr. Noel argues that due to WDFW's

13  inadequate notification to the public about the project, he was eliminated from any

14  meeting during the project's development.  Dkt. #21 at 4-5.  He also argues that "there is

15  little doubt WDFW believes it will unquestionably obtain the money [for the project]

16  from one source or another otherwise it would not have pursued the project to its present

17  stage of development " (Dkt. #21 at 5), and that WDFW failed to provide funds for the

18  disabled since they were ignored when the project was developed (Dkt. #21 at 8).  Mr.

19  Noel further contends that "immediate damage has been done to [him] since the planned

20  removal of both pheasant hunting areas within a short distance of his new home on

21  Camano Island has caused great fear and anxiety increasing his already serious case of

22  Post-Traumatic Stress Syndrome (PTSD) related to military duty" and "[i]t also has

23  generated apprehension that he will not be able to hunt pheasant in the future."  Dkt. #21

24  at 6-7.

25

MEMORANDUM OPINION
26  AND ORDER - 8

1      At the pleading stage, general factual allegations of injury resulting from the

2   defendant's conduct may suffice, for on a motion to dismiss [the court] presum[es] that

3   general allegations embrace those specific facts that are necessary to support the claim."

4   *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130, (quoting *Lujan v.*

5   *National Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695

6   (1990)).  In response to a summary judgment motion, however, the plaintiff can no

7   longer rest on such "mere allegations," but must "set forth " by affidavit or other

8   evidence "specific facts" showing that there is a genuine issue for trial.  Fed. R. Civ. P.

9   56(e); *see also*, *Lujan*, 504 U.S at 561, 112 S.Ct. at 2137.  A mere scintilla of evidence is

10  insufficient to create a factual dispute.  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

11     Here, this Court agrees with the State that Mr. Noel failed to allege specific facts

12  in his Complaint showing that he suffered an injury in fact.  The complaint alleges that

13  the Wiley Slough Project will reduce public access and access for disabled recreational

14  users and hunters (Dkt. #1 at 2-3), but it does not identify any "actual or imminent" harm

15  to Mr. Noel as a result of the WDFW's allegedly discriminatory conduct during the

16  planning stages of the project.  Thus, the allegations in Mr. Noel's complaint are

17  insufficient to satisfy the first element of the standing requirement.

18     Moreover, the injuries Mr. Noel now alleges in his response to the summary

19  judgment motion–*i.e.*, being denied input during development of the project, and fear

20  and anxiety increasing his PTSD–are not supported by the evidence he produced with his

21  response.  Mr. Noel alleges that WDFW's notices announcing the public meetings[3] were

22

23     [3]In support of its summary judgment motion, the State submitted the sworn declaration of
    Brian W. Williams, the Area Habitat Biologist who co-chaired the design team that produced the
24  Design Document for the Wiley Slough Project, indicating that the five informational site tours
    and two open houses regarding the project were advertised on the project website and through
25

MEMORANDUM OPINION
26  AND ORDER - 9

"limited in the extreme, " that a very small percentage of all Headquarters Unit hunters might have seen the notices, that the vast majority of hunters do not live in Western Skagit County and most travel from King, Snohomish and Whatcom counties, and that most hunters were first notified of the project by a large sign posted next to the entrance to the Headquarter Unit by a hunting organization opposed to the project.  However, he proffers no affidavits or evidence that supports these allegations.  In fact, Mr. Noel admits that he had already heard about the project from other hunters by the time an 8-1/2 by 11 inch notice was posted by WDFW in the Headquarters Unit. Dkt. #21 at 4.  And, Mr. Noel does not contend that he never saw the  notice about the project that was posted by the WDFW at the Headquarters Unit.

Mr. Noel has also provided a letter from his clinical psychologist, who states that Mr. Noel has a significant PTSD secondary to combat exposure of military service during the Vietnam war. *See* Dkt. #21, Attachment B.  However, neither this letter, nor any of the other evidence that Mr. Noel attached to his response to the summary judgment motion, mention or support his allegations of "fear and anxiety increasing his already serious case of PTSD." *See* Dkt. #21, Attachments A and B.  Likewise, Mr. Noel's allegations regarding WDFW's certainty about obtaining funding for the project in no way supports his claim that defendant failed to include adequate funding for accommodation or assistance to plaintiff or other disabled hunting citizens/recreational users of the area in question.

In the absence of any supporting affidavits or other evidence, Mr. Noel's

---

notices posted at an information kiosk located at the Skagit Wildlife Area. Dkt. #19, Attachment 1 at 4-5. The State also submitted copies of the notices for the site tours and open house. *Id.*, Ex. B.

MEMORANDUM OPINION
AND ORDER - 10

1    allegations alone are insufficient to show injury in fact at the summary judgment stage of

2    the litigation.  Thus, there are no genuine issues of material fact regarding Mr. Noel's

3    failure to satisfy the injury in fact element of the standing requirement.  Accordingly,

4    this Court concludes that Mr. Noel lacks standing to seek relief for the WDFW's alleged

5    violations of the ADA during the planning process for the Wiley Slough Project.

6    B.    Ripeness

7        In his response to the State's motion, Mr. Noel includes a claim not raised in his

8    complaint.  He claims that the planned Wiley Slough Project discriminates against him, a

9    disabled hunter, because it would eliminate all pheasant hunting at the Headquarters

10   Unit of the Skagit Wildlife Area and there is no reasonable alternative to him as a

11   disabled hunter.  Dkt. #21 at 1-2.  He asserts that this litigation is ripe and he has

12   standing because once the Wiley Slough Project is completed, it will be irreversible,

13   with no reasonable alternative available.  *Id.* at 8.

14        The State responds that these claims are not ripe for review.  Specifically, the

15   State argues that Mr. Noel's claim that implementation of the Wiley Slough project will

16   result in his exclusion from bird hunting on WDFW-managed lands altogether is not ripe

17   because: 1) funding and permits for the Wiley Slough Project have yet to be obtained,

18   and therefore it is not clear if and when the project may be constructed; 2) the

19   parameters of the WDFW's hunting program are in flux; and 3) until an indefinite time

20   in the future, the Headquarters Unit will continue to provide the pheasant hunting

21   opportunity that Mr. Noel currently enjoys.

22        The doctrine of ripeness is intended "to prevent the courts, through avoidance of

23   premature adjudication, from entangling themselves in abstract disagreements over

24   administrative policies, and also to protect the agencies from judicial interference until

25

26   MEMORANDUM OPINION
     AND ORDER - 11

1 | an administrative decision has been formalized and its effects felt in a concrete way by

2 | the challenging parties." *Trustees for Alaska v. Hodel*, 806 F.2d 1378, 1381 (9th Cir.

3 | 1986) (citing Abbott *Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507,

4 | 1515, 18 L.Ed.2d 681 (1967)).  Ripeness requires an evaluation of the "fitness of the

5 | issues for judicial decision and the hardship to the parties of withholding court

6 | consideration. *Abbott*, 387 U.S. at 149; 87 S.Ct. 1507.  A claim is fit for decision if the

7 | issues raised are primarily legal and do not require further factual development and the

8 | challenged action is final. *Trustees for Alaska*, 806 F.3d at 1381; *see also Duffy v.*

9 | *Riveland*, 98 F.3d 447, 452 (9th Cir. 1996).  "[A] federal court normally ought not

10 | resolve issues 'involving contingent future events that may not occur as anticipated, or

11 | indeed may not occur at all.'"  *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir.

12 | 1996).

13 | Here, Mr. Noel's claim that there would be no reasonable alternative available to

14 | him for pheasant hunting on WDFW-managed lands if the Wiley Slough Project is

15 | implemented is not ripe adjudication because it requires further factual development.

16 | While it is undisputed that the Wiley Slough Project would eliminate pheasant hunting at

17 | the Headquarters Unit, the record also contains evidence that WDFW is looking for a

18 | suitable site in Skagit County to reestablish upland pheasant hunting. *See* Dkt. #19, Ex.

19 | A at 14 and 15 (Wiley Slough Estuarine Restoration Design: Summary Report); *see also*

20 | Dkt. #22, Attachment 1 at 3, Decl. of Lora Leschner[4] (indicating that WDWF is actively

21 | searching for opportunities to buy or lease additional land for walk-in hunting,

22 | particularly pheasant hunting; WDFW is negotiating on potential new acquisitions in

23 |

---

24 | [4]Lora Leschner is the Wildlife and Lands Program Manager for Region 4 of WDFW.  Dkt. #22, Attachment 1 at 1.

25 |

26 | MEMORANDUM OPINION AND ORDER - 12

1    Skagit County that could be improved with disabled access).  Lora Leschner also

2    indicates that the nearby pheasant release sites at Snoqualmie, Lake Terrell, ARCO and

3    Intalco offer terrain similar to the Skagit Wildlife headquarters and some disabled people

4    can access those fields.  Dkt. #22, Attachment 1 at 2.

5         Mr. Noel acknowledges the existence of other pheasant hunting units, although he

6    alleges that they are "more than an hour away by auto" and "are presently heavily used"

7    which he claims "puts the disabled hunter at a distinct disadvantage."  Dkt. #21 at 3.

8    Yet, even taking these allegations as true, the issue of whether implementation of the

9    Wiley Slough Project would eliminate all reasonable alternatives of pheasant hunting for

10   him as a disabled hunter is clearly bound up in the unknown facts of whether the

11   WDFW will be successful in its efforts to acquire other pheasant hunting sites in the

12   Skagit County area that could be improved with disabled access.

13        Moreover, denying judicial review at this time is not a hardship to any party in

14   that it will not create a direct and immediate dilemma for Mr. Noel and his access to

15   pheasant hunting on the site because actual construction under the Wiley Slough Project

16   will not begin until after funding is secured and the federal and state permits have been

17   obtained.  *See* Dkt. #19, Attachment 1 at 4 and Ex. A at 14.  Adjudicating this case now,

18   based on what might or might not happen in the future, will result in a disposition that

19   may not be grounded in fact.

20   C.    Failure to State a Claim

21        The State also argues that Mr. Noel's Complaint should be dismissed because he

22   has failed to state a claim on which relief can be granted under the ADA because he has

23   not alleged that he has not alleged that he has been excluded from participation in or

24   denied the benefits of any service, program or activity of the State by reason of a

25
     MEMORANDUM OPINION
26   AND ORDER - 13

1  disability from which he suffers.  However, in light of the conclusions on standing and

2  ripeness in sections A and B *supra.*, the Court need not reach this issue.

3                              V.  CONCLUSION AND ORDER

4          For the reasons stated above, the Court finds that this suit is nonjusticiable

5  because Noel failed to show sufficient injury to confer standing, and because his claim

6  that the Wiley Slough Project will eliminate all reasonable alternatives for pheasant

7  hunting for him as a disabled hunter is not yet ripe for adjudication.  Therefore, the

8  Court GRANTS the States's motion for summary judgment (Dkt. #19) and dismisses all

9  of Mr. Noel's claims against the State.  It is further ORDERED that the pending motion

10  for elimination of court mandated mediation (Dkt. #25) shall be STRICKEN as moot.

11          DATED this 27th day of September, 2006.

12

13

14  _____

15  MONICA J. BENTON
    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26  MEMORANDUM OPINION
    AND ORDER - 14